# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KYLYCHBECK BEGALIEV,

      Petitioner,

      v.                                Case No. 2:26-cv-00358-KWR-KK

WARDEN OF OTERO COUNTY
PROCESSING CENTER and
MARY DE ANDA YBARRA, *El Paso Field Office
Director of U.S. Immigration and Customs Enforcement*,

      Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). This Petition presents the narrow issue of whether Petitioner's parole was properly terminated prior to being detained. Because Petitioner was not given any written notice detailing the basis for the termination, the Court finds that Petitioner's parole was not terminated prior to his detention. Having reviewed the parties' arguments, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED**.

## BACKGROUND

Petitioner Kylychbeck Begaliev is a native of Kyrgyzstan and citizen of Russia. Pet. ¶ 18, Doc. 1. He entered the United States with his wife and children on or about October 8, 2024, with the intent to seek asylum for political persecution in Russia. *Id.* ¶ 2. After a brief detention, Petitioner was released on parole. *Id.* According to Petitioner, when the Department of Homeland Security ("DHS") issued his I-94 form in October 2024, his parole expired on October 7, 2025. Doc. 10 at 2. Following his release, Petitioner applied for asylum, received an Employment

Authorization Document ("EAD"), and complied with the government's instructions, which included monthly check-in appointments that he attended through July 2025. *Id.* at 6; Pet'r's Decl. ¶ 5, Doc. 10-1.

On August 5, 2025, Petitioner encountered Immigration and Customs Enforcement ("ICE") officers as he was driving his truck for work. Pet. ¶ 3. ICE officers arrested him on the grounds that his parole had expired on May 29, 2025, Doc. 8 at 2, and Petitioner was detained and placed in removal proceedings, Pet. ¶ 4. In October 2025, an immigration judge ("IJ") denied asylum and found Petitioner to be removable, which he timely appealed. *Id.* Petitioner was denied release on bond at a custody redetermination hearing in December 2025. Doc. 8 at 3. Petitioner's appeal of his asylum case is pending. Pet. ¶ 4. As of the Petition's filing date, Petitioner is detained at the Otero County Processing Center in New Mexico. *Id.* ¶ 3.

On February 12, 2026, Petitioner filed this Petition, requesting release for violation of his procedural and substantive due process rights because he was re-detained without notice and a hearing and his detention has been unreasonably prolonged. *Id.* ¶¶ 49, 58.

On March 11, 2026, the Court ordered the parties to provide further information to resolve the factual dispute over whether Petitioner's parole was expired or revoked in August 2025 and, if Petitioner's parole was revoked, whether notice was provided to him. Doc. 9 (Order). In response to the Court's Order, both parties submitted a March 2026 version of Petitioner's I-94, which showed an expiration date of April 18, 2025. Doc. 10-1 at 12; Doc. 11-1. Petitioner provided evidence that his parole initially expired on October 7, 2025, including a photocopy of his Employment Authorization Document ("EAD") issued in December 2024, which required proof of parole, and his driver's license issued in March 2025. *See* Doc. 10-1. Respondents were unable to refute that Petitioner's parole did not expire until October 7, 2025, or provide information as to

when DHS changed Petitioner's parole's expiration date. Doc. 11. Respondents were also unable to provide documentation to establish that notice was sent to Petitioner regarding a termination of his parole prior to the expiration date. Doc. 11 at 2.

In sum, Petitioner asserts that his detention in fact and the duration of his pre-removal detention is unconstitutional. He seeks habeas relief in the form of release.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

The outcome of this Petition turns on whether Respondents properly terminated Petitioner's parole before his arrest in August 2025. Petitioner argues that Respondents revoked his parole, set to expire on October 7, 2025, and re-detained him without first providing him with notice and a hearing before a neutral decisionmaker. *Id.* ¶ 59. Respondents contend that Petitioner's claim must fail because his parole expired before his August 2025 arrest and re-detention; thus, Petitioner received the process he was due. Doc. 8 at 6.

As an initial matter, the Court must determine the expiration date of Petitioner's parole when it was issued in 2024. Based on the information provided by the parties, the Court finds that Petitioner has demonstrated that his parole initially expired on October 7, 2025. Petitioner filed a

3

Declaration and copies of his EAD and driver's license to support the October 7, 2025, expiration date visible on the online I-94 submitted with his Petition. Meanwhile, Respondents—the parties in the better position to access Petitioner's entire immigration record—cannot refute Petitioner's assertion that his parole did not expire until October 7, 2025. They also cannot explain why ICE officers reported that Petitioner's parole expired on May 29, 2025, when the current I-94 shows that his parole expired on April 18, 2025. Without further information from Respondents, the Court cannot find that Petitioner's parole was initially set to expire in April or May 2025.

Accordingly, the Court agrees with Petitioner and finds that DHS must have terminated (or revoked) Petitioner's parole before his arrest and re-detention on August 5, 2025. Therefore, as explained below, because his parole was terminated, Respondents were required to provide him with adequate notice. Because he was not provided with such notice, the Court finds that Respondents violated Petitioner's constitutional right to procedural due process.

## I.      Petitioner did not receive adequate written notice terminating his parole.

Now that the Court has determined that Petitioner's parole was terminated prior to its expiration, the Court considers whether Respondents were required to provide notice. Respondents have already conceded that no notice was given to Petitioner.

Applicants for admission may be released on parole on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The noncitizen must be returned to the custody he was in "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.* Parole automatically terminates when the parole period expires or when the noncitizen departs the United States. 8 C.F.R. § 212.5(e)(1) (2026). If parole does not automatically terminate, then if the purpose for the parole is accomplished or a designated official determines that "neither humanitarian reasons nor public

4

benefit warrants the continued presence of the alien in the United States, parole shall be terminated *upon written notice* to the alien." *Id.* § 212.5(e)(2)(i) (emphasis added). If a specific "charging document" is served on the noncitizen, the charging document may constitute sufficient notice to terminate parole. *Id.* Parole "shall not be regarded as an admission of the alien." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1182(d)(5)).

Here, the Court finds that Petitioner's parole was not terminated "upon written notice" as required by 8 C.F.R. § 212.5(e)(2)(i). Since Petitioner's parole did not expire under 8 C.F.R. § 212.5(e)(1), notice was required in accordance with 8 C.F.R. § 212.5(e)(2)(i). Petitioner asserts that he did not receive "any notice that my parole would be revoked or that it was revoked" before August 2025. Pet'r's Decl. ¶ 7. And Respondents simply state that they "have no documentation to establish that such notice was provided. Doc. 11 at 2.

Petitioner also did not receive a "charging document" that operates as sufficient written consent. 8 C.F.R. § 212.5(e)(2)(i) provides that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." A "charging document" is defined as a "written instrument which initiates a proceeding before an Immigration Judge." 8 C.F.R. § 244.1 (2026). As applied to Petitioner, these documents include "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.* Petitioner received a Notice to Appear ("NTA") when he entered the country in October 2024. Doc. 1-2 at 3. But the service of a charging document terminating parole while simultaneously granting parole through an I-94 form would render the notice requirement a nullity. After the October 2024 NTA, Respondents provide no evidence that any charging documents were served on Petitioner prior to or during his arrest. *See* Doc. 8. Four days after his arrest, Respondents indicate that an NTA was issued to Petitioner

5

on August 9, 2025. Doc. 8-1 at 1. But Petitioner's arrest and re-detention was based on his presence in the United States despite his parole terminating in May 2025, which resulted in the issuance of an NTA. Doc. 8-3 at 3. Thus, the August 2025 NTA cannot function as the written notice required for the parole termination that served as the basis for his arrest. Accordingly, the Court finds no evidence that Petitioner received any charging document that sufficiently qualifies as written notice terminating his parole prior to his arrest.

In sum, because there is no evidence that any written notice was sent to Petitioner before August 5, 2025, his parole was not properly terminated when he was arrested and detained. Accordingly, the Court finds that Respondents have failed to follow the applicable procedural requirements to terminate Petitioner's parole pursuant to § 1182(d)(5)(A).

## II.    <u>Respondents' failure to provide notice violates Petitioner's procedural due process rights.</u>

Respondents contend that Petitioner received the process he was due because Petitioner's parole terminated automatically upon expiration and that termination did not require a pre-deprivation hearing. Doc. 8 at 6–7. The Court disagrees; Respondents' lack of notice failed to afford Petitioner the minimal procedural due process he is entitled to under the Constitution.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. Under the Fifth Amendment, noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Thus, immigration detainees pending removal "are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

6

A noncitizen, subject to removal, is "entitled only to the Fifth Amendment guarantee of fundamental fairness." *Schroeck v. Gonzales*, 429 F.3d 947, 952 (10th Cir. 2005). Because noncitizens "do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012). Beyond this minimal procedural safeguard, "any alleged liberty interest [in discretionary immigration relief] must be created by statute or regulation." *Id.* (quoting *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009)). In immigration proceedings, "a petitioner has no liberty or property interest in obtaining purely discretionary relief." *Arambula-Medina*, 572 F.3d at 828 (citation omitted). For a statute or regulation to create a liberty interest, it "must substantively limit the exercise of official discretion through specifically defined criteria that guide official decision making." *Sosa-Valenzuela*, 692 F.3d at 1112 (citing *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir. 2001)).

Courts reviewing due process claims consider whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)).

**A.     The regulation affords Petitioner a sufficient liberty interest.**

Here, the relevant regulation provides that "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [a designated official], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole

shall be terminated upon written notice to the alien." 8 C.F.R. § 212.5(e)(2)(i). Petitioner, as a result of being paroled into the United States, is "legally considered to be detained at the border and hence as never having effected entry into this country." *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). Therefore, the only due process rights afforded to Petitioner are the "minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela*, 692 F.3d at 1112. Beyond this procedural minimum, to create a liberty interest, a statute or regulation must "substantively limit the exercise of official discretion through specifically defined criteria that limit decision making." *Id.*

8 C.F.R. § 212.5(e) specifically limits termination of parole to two situations: (1) under § 212.5(e)(1), automatic termination "without written notice"; and (2) under § 212.5(e)(2)(i), "[i]n cases not covered by paragraph (e)(1)," on written notice. Petitioner's parole was not automatically terminated because he did not depart the United States, and his parole did not expire until October 2025. Thus, in accordance with 8 C.F.R. § 212.5(e)(2)(i), Petitioner's parole needed to be terminated "upon accomplishment of the purpose for which parole was authorized," or when, in the opinion of a designated official, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." In addition to these substantive limits on the official discretion to terminate Petitioner's parole, the regulation requires that the parole "be terminated upon written notice to the alien." 8 C.F.R. § 212.5(e)(2)(i).

Petitioner states that he never received written notice and Respondents provide no indication, such as an email or declaration, that written notice was ever sent to Petitioner. Since 8 C.F.R. § 212.5(e)(2)(i) includes criteria that limit the official's decision to terminate parole, Petitioner had a liberty interest in receiving written notice that explains the basis for his parole's termination in accordance with the terms provided by Congress. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned."). Therefore, having determined that Petitioner had a sufficient liberty interest created by the regulation, the Court proceeds to determine whether, as applied to Petitioner, he received adequate process in the termination of his parole.

## B.    Petitioner was not afforded adequate process.

Since the Court finds that Petitioner had a protected liberty interest, the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In analyzing what process is due, courts must analyze "the governmental and private interests that are affected." *United States v. Muhtorov*, 20 F.4th 558, 624 (10th Cir. 2021) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). Courts should consider the following three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional procedural safeguards; and (3) the Government's interest, such as the function involved, and the fiscal and administrative burdens additional safeguards would entail. *Mathew*s, 424 U.S. at 335.

As to the first *Mathews* factor, even assuming Petitioner's interest only extends as far as Congress granted by regulation, Petitioner still has a substantial interest in his parole being terminated in accordance with regulatory procedures. Termination upon written notice to the noncitizen after one of the specified determinations in 8 C.F.R. § 212.5(e)(2)(i) is the only procedural safeguard. *See United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (10th Cir. 1980) (holding that because the "requirement of written notice is the only safeguard . . . . [W]ritten notice is essential to effectuate a termination"). The *Lagarda-Aguilar* court found that the identical phrase, "parole shall be terminated upon written notice to the alien," from 8 C.F.R. § 212.5(b) (1979) "virtually compels [the conclusion] that . . . there must be written notice of parole termination." *Id.* BIA precedent, dealing with the 1979 version of 8 C.F.R. § 212.5, provides that "an alien is entitled to written notice of termination of parole prior to the institution of exclusion proceedings." *In re. O*, 16 I. & N. Dec. 344, 353 (BIA 1977) (finding that the "regulation in question is clear. . . . [A]liens are entitled to written notice of termination of their parole prior to the institution of exclusion proceedings"). Further, without ever receiving written notice that explained a basis for terminating his parole, Petitioner had no opportunity to be heard at all. Even under the minimal procedural safeguards, Petitioner is afforded the right to notice for an "opportunity to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela*, 692 F.3d at 1112. Petitioner's liberty interest in receiving notice pursuant to 8 C.F.R. § 212.5 is particularly salient because notice is the only procedural safeguard that Congress put in place to protect his parole. Therefore, the first *Mathews* factor weighs in Petitioner's favor.

The second *Mathews* factor also weighs heavily in favor of Petitioner. There is a great risk of erroneous deprivation of Petitioner's liberty and parole given that he was neither provided written notice nor a basis for the termination of his parole. *See* 8 C.F.R. § 212.5(e)(2)(i) (stating

that parole may be terminated by notice only if certain conditions are met). Since Petitioner's parole did not terminate automatically before his arrest, written notice was the only procedural safeguard provided beyond the determinations that need to be made by a designated official. *See id*. Without providing Petitioner any written notice that explains a basis for terminating his parole, there exists a great risk of erroneous deprivation. The promulgated regulations do not provide for any procedure to challenge the termination of parole once it has been terminated. *See id.* § 212.5(e). Thus, the absence of any formal procedure to challenge parole termination renders the written notice requirement exceedingly important. Further, courts have found that parole does not terminate without written notice—actualizing the risk of erroneous deprivation as Petitioner was detained while he was still entitled to parole. *See Lagarda-Aguilar*, 617 F.2d at 528; *In re. O*, 16 I. & N. at 353. The value of adhering to the regulatory safeguard—providing written notice—is very high. Because there are no other formal mechanisms for review or opportunities to be heard, written notice provides immense value to a noncitizen. Thus, the Court finds that the second *Mathews* factor weighs in favor of Petitioner.

The final *Mathews* factor, the Government's interest and fiscal or administrative concerns in using an additional safeguard, also weighs in favor of Petitioner. Respondents undoubtedly have an interest in enforcing their immigration policies. However, adhering to the only procedural safeguard put in place by Congress, the written notice requirement, would not cause substantial fiscal or administrative concerns. Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner written notice in accordance with 8 C.F.R. § 212.5(e)(2)(i). The Court does not wade into the dispute about how detailed or individualized such notice must be, which would affect the Court's view of the fiscal

11

and administrative concerns, but the Court does find that some semblance of notice must be provided. None has been provided here.

Accordingly, the Court finds that all three *Mathews* factors weigh in favor of Petitioner, and he has not been afforded adequate process, even under his limited procedural due process rights.

### III.   <u>Only release provides a sufficient remedy</u>.

Petitioner argues that immediate release is warranted for violation of his constitutional rights. Pet. at 16; Doc. 10 at 12. Further, Petitioner argues that he was unable to receive a bond hearing due to his detention under 1225(b)(1). Doc. 10 at 13.

In essence, habeas is "a remedy for unlawful executive detention. The typical remedy is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

Here, Respondents' constitutional violation—the deprivation of a protected liberty interest without proper notice—served as the basis for Petitioner's unlawful detention. Thus, immediate release is warranted. Although Respondents point out that Petitioner was provided a bond hearing in December 2025, the Court notes that bond was primarily denied because Petitioner was an "Arriving Alien and is not bond eligible from an IJ." *See* Doc. 8-2. Thus, Petitioner does not have the possibility of a bond hearing on the merits since he is detained under § 1225(b)(1). Having found that Petitioner's parole was not properly terminated before his arrest, Petitioner has been

unlawfully detained. Since Respondents' improper revocation of Petitioner's parole was the basis for his arrest and re-detention, the appropriate remedy is immediate release.[1]

## IV.     The Court need not rule on Petitioner's remaining claims.

Petitioner argues that his pre-removal detention violates his right to substantive due process. Pet. ¶ 50. Because the Court grants habeas relief, the Court need not address Petitioner's additional claim. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

## V.     Costs and fees under the EAJA.

Petitioner requests an award of "reasonable attorney fees and costs pursuant to the Equal Access to Justice Act." Pet. at 16. In light of recent Tenth Circuit precedent, the Court finds that it may consider Petitioner's request for costs provided that he follows proper EAJA procedure.

The EAJA provides for the following procedure:

---

[1] Additionally, the Court will not engage in any speculation as to whether Petitioner's detention was cured on October 7, 2025, when his parole was initially set to expire. Respondents appear to argue that once Petitioner's parole expired, Petitioner was restored to the status he held before parole—mandatory detention under § 1225(b). *See* Doc. 8 at 7. This argument would rest on the unsupported assumption that, with proper notice, Petitioner would have been unsuccessful in challenging the revocation of his parole even though his asylum application was pending and Petitioner was lawfully working. Without a record of Petitioner's parole revocation for the Court to review, despite the Court's Order, the Court will not attempt to guess the outcome of Petitioner's custody status had he been given proper notice.

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses" and allege that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner pursue costs and fees, he is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

The Court finds that Petitioner's parole was not lawfully terminated, and thus, he was unlawfully arrested and detained while possessing the entitlement to be paroled. Respondents did not give written notice that his parole would be terminated before the expiration date. Accordingly,

14

the Court finds that the basis for Petitioner's detention is unlawful. The Court will enter a separate judgment.[2]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Petitioner be immediately released under the same conditions of release that were previously in place prior to his detention within **24 hours** of the entry of this Order. Respondents are directed not to arrest and detain Petitioner again **prior to properly terminating his parole** with adequate written notice in accordance with 8 C.F.R. § 212.5(e) and the Due Process Clause.

**IT IS FINALLY ORDERED** that the parties shall file a joint status report within **seven (7) days** of the entry of this Order.

        /S/

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

---

[2] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).